**Madelyn WOODS, Appellant,**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Appellee.**

**No. 87–1867.**

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1988.

Decided Aug. 5, 1988.

Frederick S. Spencer, Mountain Home, Ark., for appellant.

Larry McCord, Ft. Smith, Ark., for appellee.

Before GIBSON and BOWMAN, Circuit Judges, and STUART,[1] Senior District Judge.

STUART, Senior District Judge.

Madelyn Woods has appealed from the district court's[2] Order granting the motion

---

1. The Honorable William C. Stuart, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

2. The Honorable Donald P. Lay, Chief Judge of the United States Court of Appeals for the Eighth Circuit sitting as United States District Judge by special designation.

for summary judgment filed by the Secretary of Health and Human Services (Secretary) and affirming the Secretary's decision that she was entitled to a closed period of disability from August 22, 1983 to October 1, 1984. This Court has jurisdiction to review this action under 28 U.S.C. § 1291.

Due to a back injury sustained on her job as a sewing machine operator on August 22, 1983, appellant underwent a lumbar laminectomy on September 23, 1983. Because the result was not satisfactory, a L5/S1 laminectomy and nerve root exploration was performed on May 14, 1984. Appellant filed her application for disability benefits on May 30, 1985, alleging a disability onset date of August 22, 1983. Her claim was denied by the Social Security Administration initially and upon reconsideration. After a hearing, the Administrative Law Judge (ALJ) on December 10, 1985, issued a decision holding that appellant was entitled to disability benefits for the closed period August 22, 1983 to October 1, 1984, but not thereafter. The Appeals Council concluded there was no basis to grant review, so the ALJ's decision stands as the final decision of the Secretary. Appellant appealed to the United States District Court which found that the Secretary's decision was supported by substantial evidence on the record as a whole.

Our review is limited to a determination of whether the Secretary's decision to close appellant's period of disability on October 1, 1984 is supported by substantial evidence on the record as a whole. *Bolton v. Bowen*, 814 F.2d 536, 537 (8th Cir.1987). Consequently, appellant's complaints and treatment prior to that period need not be considered in detail. In reviewing the ALJ's decision, we must take into account whatever in the record fairly detracts from its weight. *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir.1987).

Appellant relies for reversal on her testimony, which is supported by her husband's testimony, and the medical evidence provided by Dr. John C. Vidoloff who performed a consultive examination on the appellant at her attorney's request on July 2, 1985.

I. Appellant first argues that the Secretary and the district court erred in failing to find that she was disabled under 20 CFR 404, Subpart P, Appendix 1, Sections 1.05C(1) and (2) covering vertebrogenic disorders. She relies on Dr. Vidoloff's conclusion, after a single examination, that she had a permanent partial impairment rating of 29% and his recommendation that she was disabled under the Appendix 1 listing.

Dr. Vidoloff's opinion is in sharp contrast to that of Dr. Boop, who performed the second laminectomy and followed Appellant's progress through March 19, 1985. On that date, he found her overall affect and activity level that had been good in December had improved. She was riding a bus to school and taking business administration courses. She was tolerating the daily bus trip of 83 miles well. She occasionally took a Darvocet tablet, but not regularly, and she took no other medication. Examination revealed that her wound was well healed and not tender. She had a moderate decrease of range of motion of the back and the left calf was larger than the right by approximately two centimeters. However, deep tendon reflexes were symmetrical and active bilaterally and she had good strength throughout the lower extremities. She was able to walk on heels and toes but did have some subjective numbness in the S1 dermatone pattern. Straight leg raising was negative in the sitting position. Dr. Boop gave her a permanent partial medical impairment rating to the body as a whole of 15%. At that time he discharged her from his care.

In addition to the conflicting medical testimony, Judge Lay pointed out that:

In order to be found disabled under these sections, the claimant must demonstrate sensory and reflex loss. Dr. Vidoloff, however, made the following statements concerning her sensation and reflexes: "On examination knee jerk and ankle jerk are brisk. Extensor hallucis longus is strong. Sensation over medial and lateral aspects of both legs is intact." Therefore, his own findings do not support his recommendation.

There is substantial evidence on the record as a whole to support the Secretary's conclusion that appellant has not met the requirements of 20 CFR 404, Subpart P, Appendix 1, Sections 1.05C(1) and (2).

■ II. Appellant next argues that the district court's and the ALJ's interpretation of substantial gainful activity is not correct and is reversible error. Plaintiff's position is not clear, but the cases cited are not applicable to the evidence in this case. She argues that the ALJ placed "unwarranted emphasis on a few positive statements made by Madelyn at the hearing or the absence of statements or isolated remarks of the reports before him."

There is considerably more in the record to support the ALJ than appellant recognizes. Her testimony at the hearing and her statements to Dr. Boop in September and December 1984 and March 1985 furnish adequate support for a finding that appellant had the residual functional capacity to engage in sedentary work by January, 1985. However, the record as a whole does not contain substantial evidence to support a finding that she could engage in the full range of sedentary work activity by October 1, 1984.

After his follow-up examinations on September 25, 1984 Dr. Boop reported that the 80 mile trip each day to vocational school was aggravating appellant's back pain. He stated that she needed to delay attendance at the school and recommended that applicant postpone school until January 1985. Appellant was given Ativan and Darvocet for pain from this acute flair-up. In a letter dated September 21, 1984 to appellant's rehabilitation specialist, Dr. Boop stated:

Madeline Woods has been seen in follow-up in our Neurosurgery Clinic at UAMS on two occasions since her surgery. She is progressing satisfactorily although she still has some complaints of pain. In my opinion, she should be able to return to work in approximately six months from the time of her surgery which is around the first of December 1984. She will not be able to lift in excess of 30 pounds nor repetitively bend, climb, crawl, push or pull. She will need to begin work on a half day basis and gradually increase her activity level. It would be necessary for her to change positions periodically during the work day from sitting to standing to possibly taking a break for rest. Any of the jobs you listed would be acceptable within those limitations. Sales clerk or light assembly work would be least likely to be successful in my opinion.

On the next follow-up examination December 18, 1984, Dr. Boop stated that appellant was definitely better than in September and was sleeping well and exercising properly. She was taking Darvocet 3 or 4 times a day. He felt that she would be able to take vocational training after the first of the year and considered her condition essentially stable.

As the major daily activity that seemed to be inconsistent with appellant's claim of disabling pain was the long drive to vocational training classes, and as Dr. Boop did not believe that she would be able to return to work until December 1984 and did not feel she could tolerate the bus trip until after the first of the year, there is no substantial evidence in the record as a whole to support the ALJ's decision that appellant's period of disability ended October 1, 1984.

III. Appellant's points 3, 4, 5 and 6 will be discussed together as they are interrelated. They are concerned with Appellant's claim of disabling pain, the ALJ's treatment of these allegations, the use of the grid when the non-exertional impairment of pain is alleged and the ALJ's failure to call a vocational expert.

The ALJ found that appellant had a severe impairment but her testimony that the pain she experiences would preclude all work activity was not fully credible in light of the total evidence. He found that her testimony and the other evidence showed that the pain was not of such frequency, intensity or duration as to be disabling. Her daily activities were not consistent with those of a person experiencing severe intractable pain. Plaintiff does some housework and crocheting, watches TV and drives to vocational school in Harrison, 45

minutes each way 5 days a week. Two or three times a week she stops about halfway coming and going. He found that her additional non-exertional limitations did not significantly affect her ability to perform the full range of sedentary work after October 1, 1984. He applied the grid and found that Section 404.1569 of Regulation No. 4 and Rule 201.27, Table No. 1, Appendix 2, Subpart P, Regulation No. 4 directed a finding of not disabled after October 1, 1984.

When evaluating a claimant's subjective complaints of pain, the ALJ must consider the claimant's prior work record and observations by third parties involving the following: (1) daily activities; (2) the duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984) (subsequent history omitted). If there are inconsistencies in the record as a whole, an ALJ is permitted to disbelieve subjective testimony of pain. *Id.* However, an ALJ may not disregard a claimant's subjective complaints of pain solely because there is no supporting objective evidence. *Wheat v. Heckler*, 763 F.2d 1025, 1030 (8th Cir.1985).

The ALJ did not comment specifically upon the credibility of appellant's testimony that the medication she is taking makes her groggy, light headed and 4 or 5 times a week gives her headaches that last 3 to 4 hours and usually require her to lay down; that she feels weak and has difficulty concentrating; or that she cannot sit for very long without considerable pain.

This evidence relates to the ALJ's findings that the non-exertional impairment from pain did not significantly affect her ability to perform the full range of sedentary work. Consequently, the ALJ applied the grid rather than calling a vocational expert. If this testimony is accepted at face value, the record as a whole would not support the finding that appellant could perform the full range of sedentary work and it would be error not to call a vocation-

al expert. *See Tucker v. Heckler*, 776 F.2d 793, 796 (8th Cir.1985).

However, such testimony is contrary to her statements to Dr. Boop on March 19 when he reported that:

> She states that she is riding a bus to Harrison for school and is taking courses in business administration now. This makes a total daily bus trip of 83 miles but she is tolerating this well at this time. She occasionally takes a Darvocet tablet but not regularly and takes no other medication.

Apparently, the ALJ discredited Woods's testimony concerning her inability to sit for prolonged periods due to disabling pain, although he did not make specific findings relating to this testimony. Under the circumstances in this case, it was not reversible error to fail to specifically discredit the foregoing testimony. There is substantial evidence in the record that Woods is capable of engaging in sedentary work for the period following January 1985. The ALJ's failure to call a vocational expert is not reversible error. *See, e.g., Dawson v. Bowen*, 815 F.2d 1222, 1227 (8th Cir.1987) (though factually distinguishable, court held that failure to call vocational expert was not reversible error where there was substantial evidence that claimant could perform work in national economy despite non-exertional impairment).

In conclusion, the district court's judgment affirming the final decision of the Secretary is modified by changing the closing date of appellant's disability to January 1, 1985 and, as so modified, is affirmed.